```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT BLUEFIELD
```

MARKEL INSURANCE CO.,

    Plaintiff,

v.                              CIVIL ACTION NO. 1:08-1445

MIKE DANIELEY d/b/a
MIKE'S TOWING & WRECKING, et al.,

    Defendants.

## MEMORANDUM OPINION

Pending before the court is plaintiff's motion for default judgment against defendant Kenny Williams, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. (Doc. # 39). Also pending is plaintiff's motion for summary judgment. (Doc. # 39). For reasons expressed more fully below, the motion for default judgment is GRANTED and the motion for summary judgment is GRANTED in part.

### I. Background

This case arises out of the hit-and-run death of Jason Edward Morton, on September 1, 2006. On June 23, 2008, Richard Lee Morton and Rena D. Bane, as Joint Personal Representatives of the Estate of Jason Edward Morton (the "Morton Estate"), filed suit in Mercer County Circuit Court against Kenny Williams, Mike Danieley d/b/a Mike's Towing & Wrecking, and Dr. T. Corp., d/b/a Cheers (the "underlying action"). See Complaint, Civil Action No. 08-C-365-WS (attached as Exhibit A to Plaintiff's Motion for

Summary Judgment).  According to the allegations in the underlying complaint, Mike's Towing was hired to make vehicle repairs to a Jeep Grand Cherokee belonging to Dorothy Brown.  Kenny Williams, in his capacity as an employee, representative, agent, and servant of Mike's Towing, was driving the aforementioned Jeep Grand Cherokee on Septebmer 1, 2006, when he struck and killed Jason Morton.  Williams fled the scene and did not stop and render aid or assistance or identify himself to authorities.  The complaint also alleges that, immediately before the collision, Williams had been drinking to the point of intoxication and physical impairment while a customer and patron of Cheers, owned and operated by Dr. T. Corp.

After the accident, Williams returned the vehicle to Mike's Towing and, together with others in the business, began making repairs on the Jeep to conceal its involvement in the hit-and-run death.  These "employees, agents, representatives and servants" of Mike's Towing removed damaged parts from the Jeep and, when confronted by law enforcement, lied and stated the damaged parts had been destroyed.  A search of Mike's Towing uncovered the damaged parts which were later linked to Morton's death by forensic analysis.  "Employees, agents, representatives and servants" of Mike's Towing also concealed Williams' involvement in the accident by falsely stating that he had been 50 miles away on a wrecker call at the time Morton was killed.

The state court complaint alleges claims of negligence and civil conspiracy against Kenny Williams (Counts 1 and 3) and claims of negligent entrustment, civil conspiracy, and spoliation (Counts 2, 3, and 4) against Danieley d/b/a Mike's Towing.  The Morton Estate settled its claims against Mike Danieley and, by Order entered October 9, 2009, the circuit court dismissed Danieley and Mike's Towing with prejudice.

Plaintiff, Markel Insurance Company, filed the instant declaratory judgment action, pursuant to 28 U.S.C. § 2201, seeking a declaration regarding its rights and obligations pursuant to an insurance policy it issued to Michael Danieley d/b/a Mike's Towing & Wrecking.  The sole issue in this case is whether coverage exists for defendant Kenny Williams under Danieley's policy.

Markel personally served the Summons and Complaint upon all the defendants except Kenny Williams.  By Order entered September 11, 2009, the court granted plaintiff's Motion for Authorization for Service by Publication upon Kenny Williams.  The Order of Publication was published in the Bluefield Daily Telegraph on September 24 and October 1, 2009, and in the Princeton Times on September 25 and October 2, 2009.  Kenny Williams has failed to plead or otherwise defend and, on November 2, 2009, the Clerk entered default against Williams pursuant to Fed. R. Civ. P. 55(a).

## II. Motion for Default Judgment

The Clerk's entry of default as to Kenny Williams was entered on November 2, 2009. As Williams has failed to plead or otherwise defend, the court hereby **GRANTS** the plaintiff's motion for default judgment as to defendant Kenny Williams.

## III. Motion for Summary Judgment

Markel has filed a motion for summary judgment to which no defendant has filed a response in opposition. Markel issued Policy Number 02ARPKG0001000 to Independent Garage and Towing Contractors Services, Inc. and Michael Danieley d/b/a Mike's Towing & Wrecking. Independent Garage and Towing Contractors Services, Inc. is the risk purchase group in which Michael Danieley d/b/a Mike's Towing & Wrecking is a member. The Policy contains a business auto coverage form number CA 00 01 10 01 for West Virginia and a commercial general liability coverage form number CG 00 01 07 98 for West Virginia. The Policy was in effect from September 15, 2005 through September 15, 2006. According to Markel, there is no coverage under the Policy for the defense of and indemnification for any of the claims asserted against Kenny Williams.

A.  *Standard*

> Rule 56 of the Federal Rules of Civil Procedure provides:
>
> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

>no genuine issue as to any material fact and that
>the moving party is entitled to a judgment as a
>matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

>The mere existence of a scintilla of evidence in
>support of the plaintiff's position will be
>insufficient; there must be evidence on which the
>jury could reasonably find for the plaintiff.
>The judge's inquiry, therefore, unavoidably asks
>whether reasonable jurors could find, by a
>preponderance of the evidence, that the plaintiff
>is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51.

B.      *Business Auto Coverage*

Markel contends that it is entitled to judgment as a matter of law because the Jeep Grand Cherokee involved in the accident is not a "covered auto" under the Policy.  The business auto coverage portion of the Policy states, in pertinent part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

Business Auto Coverage Form, pg. 2 of 10 (attached as Exhibit B to Plaintiff's Motion for Summary Judgment).  An "insured" is defined by the Policy as:

> The following are "insureds":
>
> a.   You for any covered "auto".
>
> b.   Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
>> (1) The owner or anyone else from whom you hire or borrow a covered "auto".  This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>>
>> (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>>
>> (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

6

>    (4) Anyone other than your "employees",
>        partners (if you are a partnership),
>        members (if you are a limited liability
>        company), or a lessee or borrower or any
>        of their "employees", while moving
>        property to or from a covered "auto".
>
>    (5) A partner (if you are a partnership), or a
>        member (if you are a limited liability company)
>        for a covered "auto" owned by him or her or a
>        member of his or her household.

Id. The foregoing makes clear that "insured" status under the Policy hinges on the use of a "covered auto".

According to the Policy, "[o]nly those `autos' described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any `trailers' you don't own while attached to any power unit described in Item Three)" are "covered autos." Business Auto Coverage Form, pg. 1 of 10. The "specifically described" autos listed in Item Three of the Declarations are: 1) a 2000 Ford Flatbed, VIN#1FDAF556F1YEB08620; 2) a 1999 Ford Flatbed, VIN#1FDXF46F1XEE96130; 3) a 1999 International Flatbed, VIN#1HTSCABMAXH647196; 4) a 1990 Volvo Tow, VIN#4V1WDBCF1LN625767; 5) a 1991 Mack Tow, VIN#1M3AA15K0MW001094; and 6) Dealer Plate VIN#WD1122. The Jeep Grand Cherokee involved in the accident is not described in Item Three of the Declarations. Furthermore, the policy language at issue is clear and unambiguous. See Ferrell v. Brooks, 2007 WL 2893000, *3 (N.D.W. Va. 2007) (construing similar language and holding that

while the policy therein was "complex and require[d] careful reading," it was not ambiguous). Accordingly, the Jeep is not a "covered auto" under the Policy and, therefore, the Policy does not provide business auto coverage for the claims of the Morton Estate against Kenny Williams.

C.      *Commercial General Liability Coverage*

Markel also contends that it is entitled to judgment as a matter of law because the claim for civil conspiracy does not constitute an "occurrence" under the Commercial General Liability portion of the Policy. The Insuring Agreement obligates Markel to

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Commercial General Liability Coverage Form, pg. 1 of 13. The Policy goes on to state that the "insurance applies to `bodily injury' and `property damage' only if . . . [t]he `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory'. . . ." Id. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

8

Commercial General Liability Coverage Form, pg. 12 of 13

The Policy does not define the term "accident." Under West Virginia law, "accident" is defined as "an event occurring by chance or arising from unknown causes[.]" State Bancorp, Inc. v. U.S. Fid. & Guar. Ins. Co., 483 S.E.2d 228, 234 (W. Va. 1997) (citation omitted); W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 492 (W. Va. 2004). For liability coverage, "[a]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage. . . . To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual." State Bancorp, 483 S.E. 2d at 234 (citations omitted).

West Virginia's highest court has held that a claim of civil conspiracy, like the one the Morton Estate asserts against Kenny Williams, is not an "occurrence" under an insurance policy. Stanley, 602 S.E.2d at 495; see also State Bancorp, 483 S.E.2d at 235-36 (quoting Fibreboard Corp. v. Hartford Accident & Indem. Co., 16 Cal. App.4th 492, 20 Cal. Rptr.2d 376, 387 (1993) ("[T]here is a conscious, decisionmaking element that takes civil conspiracies out of the range of behavior encompassed within the meaning of an `occurrence.'")). According to the Fibreboard court,

> A "civil conspiracy" entails formation and operation of the conspiracy and acts done in

> furtherance of the common design.  In other words, "a person, or defendant, cannot <u>inadvertently become a member of a civil conspiracy</u>. . . ." [T]here must be a preconceived plan and unity of design and purpose, <u>for the common design is of the essence of the conspiracy</u>."  Thus, there is a conscious, decisionmaking element that takes civil conspiracies out of the range of behavior encompassed within the meaning of an "occurrence."  An insured who participates in a conspiracy, even if the agreed upon behavior or course of conduct is to act negligently, cannot expect coverage for "an accident."  In its plain, ordinary sense, an accident is "an unforeseen and unplanned event or circumstance."  As a matter of law, a civil conspiracy cannot occur by accident; therefore, the policies afford no coverage for these claims.

<u>Fibreboard</u>, 16 Cal. App.4th at 510-11, 20 Cal. Rptr.2d at 387 (internal citations omitted) (emphasis in original).

Based on the foregoing authorities, the court finds that the civil conspiracy claim against Kenny Williams is excluded from coverage under the instant policy and plaintiff's motion for summary judgment on this ground should be GRANTED.

## IV.  <u>Conclusion</u>

For the reasons discussed above, plaintiff's motion for default judgment against defendant Kenny Williams is granted. The motion for summary judgment is granted to the extent the court FINDS and DECLARES that 1) the Business Auto Coverage Form of the Policy does not provide coverage for the claims asserted against Kenny Williams and 2) the Commercial General Liability

Coverage Form does provide coverage for the claim of civil conspiracy against Kenny Williams.[*]

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and all unrepresented parties.  A Judgment Order of even date herewith will be entered.

**IT IS SO ORDERED** this 8th day of February, 2010.

>                     ENTER:
>
>                     David A. Faber
>                     Senior United States District Judge

---

[*] In its motion for summary judgment, plaintiff did not seek a ruling on whether the Commercial General Liability portion of the Policy provides coverage for the negligence claim asserted against Kenny Williams.